1  Christopher D. Moon (SBN 246622)
   Email: cmoon@kamberlaw.com
2  Naomi Spector (SBN 222573)
   Email: nspector@kamberlaw.com
3  **KAMBERLAW, LLP**
   9404 Genesee Avenue, Suite 340
4  La Jolla, California 92037
   Phone: 310.400.1051
5  Fax: 858.800.4277

6  Michael T. Fraser (SBN 275185)
   Email: mfraser@thefraserlawfirm.net
7  **THE FRASER LAW FIRM, P.C.**
   4120 Douglas Blvd., #306-262
8  Granite Bay, California 95746
   Phone: 888.557.5115
9  Fax: 866.212.8434

10 Counsel for Plaintiff Joseph Mattocks
   and the putative Class

11

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH MATTOCKS, individually, on behalf of himself and others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> KIMBERLY-CLARK CORPORATION; KIMBERLY-CLARK WORLDWIDE, INC.; and KIMBERLY-CLARK GLOBAL SALES, LLC, <br><br> Defendants. | Case No.: **'17CV1397 MMAAGS** <br><br> **CLASS ACTION COMPLAINT FOR** <br><br> **1. UNFAIR AND UNLAWFUL BUSINESS ACTS AND PRACTICES (CAL. BUS & PROF. CODE §17200 *ET SEQ.*);** <br> **2. DECEPTIVE ADVERTISING PRACTICES (CAL. BUS & PROF. CODE § 17500, *ET SEQ.*);** <br> **3. CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE § 1750, *ET SEQ.*);** <br> **4. BREACH OF EXPRESS WARRANTY; AND** <br> **5. QUASI-CONTRACT.** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Joseph Mattocks, individually and on behalf of others similarly situated, by and through his undersigned counsel, hereby files this Class Action Complaint against Defendants Kimberly-Clark Corporation, Kimberly-Clark Worldwide, Inc., and Kimberly-Clark Global Sales, LLC (collectively "Defendants" or "Kimberly-Clark") and states as follows:

## NATURE OF THE ACTION

1.      This case arises out of Defendants' unlawful merchandising practices with respect to their Scott® Naturals Flushable Cleansing Cloths; Scott® Naturals Flushable Wipes; and Scott® Naturals with Aloe Vera Flushable Wipes, which are offered for sale in both soft packages and "pop-up tubs," as well as in refill packages  (collectively, the "Products" or in the singular, "Product").  The Products are moist towelettes intended for use in place of, or in addition to, toilet paper.

2.      Defendants label and advertise the Products as being "natural" by prominently and uniformly displaying the term "Naturals" on the Products' labeling and packaging.  In addition, Defendants reinforce the Products' "natural" image through the Products' labeling and packaging designs, which include nature images, such as green coloring and leaves.  As a result, the Products' labeling and packaging representations convey to reasonable consumers that the Products are natural and free of unnatural, synthetic, and/or artificial ingredients.

3.      Defendants' labeling, packaging, and advertising of the Products as "natural" is false, misleading, and likely to deceive reasonable consumers because the Products actually contain numerous unnatural, synthetic, and/or artificial ingredients, including (and as more specifically described *infra*) phenoxyethanol, sodium benzoate, amodimethicone, sodium lauryl glucose carboxylate, polysorbate 20, lauryl glucoside, sorbic acid, malic acid, and propylene glycol.  In addition, on information and belief, during the class period (defined *infra*), the Products also contained methylisothiazolinone, yet another unnatural, synthetic and/or artificial ingredient.

**CLASS ACTION COMPLAINT**

Consequently, the Products are not natural.

4.    Plaintiff Joseph Mattocks ("Plaintiff") brings this action individually and on behalf of those similarly situated.  Plaintiff seeks to represent a National Class and a California Subclass (defined *infra*).  Plaintiff seeks damages, interest thereon, reasonable attorneys' fees and costs, restitution, other equitable relief, and disgorgement of all benefits Defendants have enjoyed from their unlawful and/or deceptive business practices, as detailed herein.  In addition, Plaintiff seeks injunctive relief to stop Defendants' unlawful conduct in the labeling, packaging, advertising, and marketing of the Products.  Plaintiff makes these allegations based on his personal knowledge as to himself and his own acts and observations and, otherwise, on information and belief based on investigation of his counsel.

## JURISDICTION AND VENUE

5.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendants; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

6.    This Court has personal jurisdiction because Defendants' contacts with the forum are continuous and substantial, and Defendants intentionally availed themselves of the markets within California through their sales of the Products to California consumers.

7.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendants engage in continuous and systematic business activities within the State of California.  Moreover, a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District.  *See* Declaration of Joseph Mattocks Regarding Venue Pursuant to Cal. Civ. Code § 1780(d), attached hereto as Exhibit A.

## PARTIES

8.    Plaintiff Joseph Mattocks is a resident of San Diego, California.  Plaintiff

**CLASS ACTION COMPLAINT**

purchased a pop-up tub of Scott® Naturals Flushable Cleansing Cloths from an Albertsons grocery store in El Cajon, California on May 5, 2017, for approximately $2.99, plus tax. Plaintiff purchased the Product for personal and family use. Plaintiff's claim is typical of all Class members in this regard. In addition, the advertising, packaging, and labeling of the Product purchased by Plaintiff is typical of and substantially similar to the advertising, packaging, and labeling of the Products purchased by members of the Class.

9.    Defendant Kimberly-Clark Corporation is a Delaware corporation with its principal place of business at 401 North Lake Street, Neenah, Wisconsin 54956.

10.    Defendant Kimberly-Clark Worldwide, Inc. and Defendant Kimberly-Clark Global Sales, LLC are Delaware corporations with principal offices at 351 Phelps Drive, Irving, Texas 75038. Upon information and belief, Kimberly-Clark Worldwide, Inc. and Kimberly-Clark Global Sales, LLC are wholly-owned subsidiaries of Defendant Kimberly-Clark Corporation.

11.    Defendants and their agents promoted, marketed and sold the Products at issue in this jurisdiction and in this judicial district. The unfair, unlawful, deceptive, and misleading advertising and labeling of the Products was prepared and/or approved by Defendants and their agents, and was disseminated by Defendants and their agents through labeling and advertising containing the misrepresentations alleged herein.

## FACTUAL ALLEGATIONS

### A.    Contrary to Defendants' Representations that the Products Are Natural, the Products Contain Numerous Unnatural, Artificial, and Synthetic Ingredients

12.    Defendants manufacture, market, promote, advertise, and sell numerous products under various brand names, including the Scott® Naturals Products at issue.

13.    Seeking to profit from consumers' desire for natural products, free of synthetic, artificial, and/or unnatural ingredients, Defendants falsely and deceptively represent the Products as being "natural" by prominently and uniformly displaying the

term "Naturals" on the Products' labeling and packaging.  In addition, Defendants reinforce the Products' "natural" image through the Products' labeling and packaging designs, which include nature images, such as green coloring and leaves.





**CLASS ACTION COMPLAINT**

**Products' Ingredients**

14.    Despite labeling and advertising the Products as being natural, the Products actually contain numerous unnatural, synthetic, and/or artificial ingredients, including phenoxyethanol, sodium benzoate, amodimethicone, sodium lauryl glucose carboxylate, polysorbate 20, lauryl glucoside, sorbic acid, malic acid, and propylene glycol.  In addition, on information and belief, during the class period (defined *infra*), the Products also contained methylisothiazolinone, another unnatural, synthetic and/or artificial ingredient.

15.    Phenoxyethanol, according to the Federal Trade Commission ("FTC"), is an unnatural, synthetic preservative, which can depress the central nervous system and may cause vomiting and diarrhea in infants.[1]

16.    In addition, the FTC charged several companies with falsely claiming in advertisements that their products were all-natural or 100% natural when those products contained unnatural, synthetic ingredients, including phenoxyethanol.[2]

17.    Furthermore, a May 2012 report from the French Agence Nationale de Securite du Medicament et des Produits de Sante cautioned consumers not to use wipes containing phenoxyethanol on children under the age of three because of health concerns related to "reproductive and developmental toxicity."

18.    The Material Safety Data Sheet (MSDS) on phenoxyethanol states that it

---

[1] https://www.fda.gov/ForConsumers/ConsumerUpdates/ucm049301.htm (last visited May 25, 2017).

[2] https://www.ftc.gov/news-events/press-releases/2016/04/four-companies-agree-stop-falsely-promoting-their-personal-care (last visited May 25, 2017);
https://www.ftc.gov/system/files/documents/cases/160412shikai-cmpt.pdf (last visited May 25, 2017);
https://www.ftc.gov/system/files/documents/cases/160412rockymountaincmpt.pdf  (last  visited  May 25, 2017);
https://www.ftc.gov/system/files/documents/cases/160412edenbodyworkscmpt.pdf  (last  visited  May 25, 2017);
https://www.ftc.gov/system/files/documents/cases/160412beyondcoastalcmpt.pdf (last visited May 25, 2017);
https://www.ftc.gov/system/files/documents/cases/160412californianaturelcmpt-exhibits.pdf (last visited May 25, 2017);
https://www.ftc.gov/news-events/press-releases/2016/07/ftc-approves-four-final-orders-barring-companies-making-false-all/ (last visited May 25, 2017).

can cause skin and lung irritation, and that it may also be toxic to the kidneys, nervous system, and liver, and repeated, long-term exposure can cause organ damage. The MSDS further states that the toxic effects can occur through inhalation, skin exposure, and ingestion.

19.    According to Hazard Notifications from the Globally Harmonized System of Classification and Labeling of Chemicals (GHS), phenoxyethanol presents a category 2 danger for skin irritation, a category 4 danger for acute oral toxicity if swallowed, and a category 2A danger for causing serious eye damage or eye irritation.

20.    <u>Sodium benzoate</u> is a synthetic chemical preservative. According to federal regulation 21 C.F.R. § 184.1733, sodium benzoate "is not found to occur naturally." Indeed, the FDA stated that the use of the term "natural" in association with a product containing sodium benzoate is false and misleading.[3]

21.    <u>Amodimethicone</u> is an abbreviation of "amine-functionalized silicone," which is a family of silicones, synthetically modified to have specific properties. The most well-known silicone, dimethicone, is a synthetic ingredient used as a lubricant and conditioning agent. The FTC recently charged several companies with falsely claiming in advertisements that their products were all-natural or 100% natural when those products contained unnatural, synthetic chemical ingredients, such as dimethicone.[4]

---

[3] http://fda-warning-letters.blogspot.com/2011/03/shemshad-food-products-inc-31111.html (last visited May 25, 2017).

[4] https://www.ftc.gov/news-events/press-releases/2016/04/four-companies-agree-stop-falsely-promoting-their-personal-care (last visited May 25, 2017); https://www.ftc.gov/system/files/documents/cases/160412shikai-cmpt.pdf (last visited May 25, 2017); https://www.ftc.gov/system/files/documents/cases/160412rockymountaincmpt.pdf (last visited May 25, 2017); https://www.ftc.gov/system/files/documents/cases/160412edenbodyworkscmpt.pdf (last visited May 25, 2017); https://www.ftc.gov/system/files/documents/cases/160412beyondcoastalcmpt.pdf (last visited May 25, 2017); https://www.ftc.gov/system/files/documents/cases/160412californianaturelcmpt-exhibits.pdf (last visited May 25, 2017); https://www.ftc.gov/news-events/press-releases/2016/07/ftc-approves-four-final-orders-barring-companies-making-false-all/ (last visited May 25, 2017).

22.    Sodium lauryl glucose carboxylate is a synthetic surfactant or cleaning agent.

23.    Polysorbate 20 is a synthetic ingredient typically used as an emulsifier or a surfactant.  Polysorbates are produced by reacting sorbitol with ethylene oxide.  The reaction of these ingredients can result in the creation of 1,4-dioxane, which is potentially carcinogenic and has been linked to skin allergies and skin irritation.

24.    Lauryl glucoside is a synthetic surfactant or cleaning agent.

25.    Sorbic acid is a "chemical preservative," as defined by federal regulations 21 C.F.R. § 182.3089 and 21 C.F.R. § 582.3089.

26.    Malic acid is classified as a synthetic adjuvant or flavoring substance. *See* 21 C.F.R. § 582.60.

27.    Propylene glycol "does not occur in nature."  21 C.F.R. § 184.1666. Propylene glycol is manufactured by treating propylene with chlorinated water to form chlorohydrin, which is converted to glycol by treatment with a sodium carbonate solution.  It is also prepared by heating glyercol with sodium hydroxide.

28.    Methylisothiazolinone is a synthetic preservative, biocide, EPA-registered pesticide, and is toxic.  Methylisothiazolinone is used to control slime-forming bacteria, fungi, and algae.  Methylisothiazolinone is an allergenic and was named Allergen of the Year for 2013 by the American Contact Dermatitis Society.  Prolonged exposure to even low levels of Methylisothiazolinone and related compounds may have damaging consequences to the developing nervous system.

29.    Accordingly, because the Products contain numerous unnatural, synthetic, and/or artificial ingredients, including phenoxyethanol, methylisothiazolinone, sodium benzoate, amodimethicone, sodium lauryl glucose carboxylate, polysorbate 20, lauryl glucoside, sorbic acid, malic acid and propylene glycol, they are mislabeled, misleading, and misbranded under both federal and state law.

30.    7 U.S.C. § 6502(21) defines the term "synthetic" as "a substance that is formulated or manufactured by a chemical process or by a process that chemically

changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes."

31.    In addition, the FTC has cautioned that "[m]arketers that are using terms such as natural must ensure that they can substantiate whatever claims they are conveying to reasonable consumers. If reasonable consumers could interpret a natural claim as representing that a product contains no artificial ingredients, then the marketer must be able to substantiate that fact."[5]

32.    Consumers have become increasingly concerned about the effects of unnatural, synthetic and/or artificial ingredients in products. Indeed, consumers are willing to pay, and have paid, a premium for products represented as "natural" over products containing unnatural, synthetic ingredients.[6]

33.    Reasonable consumers, including Plaintiff, believe that products represented as "natural" do not contain synthetic, artificial, and/or unnatural ingredients.

34.    Reasonable consumers lack the meaningful ability to test or independently ascertain or verify whether a product is natural, especially at the point of sale. Reasonable consumers would not know the true nature of the ingredients by merely reading the ingredients label on the Products.

35.    Nor are reasonable consumers expected or required to scrutinize the ingredients list on the Products to confirm or debunk Defendants' prominent and uniform representations that the Products are "natural."

36.    Nowhere do Defendants disclose on the labeling and packaging of the Products that the ingredients described herein are in fact synthetic, artificial, and/or unnatural. Therefore, Defendants materially misled and failed to adequately inform

---

[5] Guides for the Use of Environmental Marketing Claims, 75 FR 63552-01, 63586 (Oct. 15, 2010).

[6] In 2010, for example, nationwide sales of natural products totaled $117 billion. http://www.npainfo.org/NPA/About_NPA/NPA/AboutNPA/AbouttheNaturalProductsAssociati on.aspx?hkey=8d3a15ab-f44f-4473-aa6e-ba27ccebcbb8 (last visited May 25, 2017).

**CLASS ACTION COMPLAINT**

consumers, including Plaintiff, that the Products contain unnatural, synthetic and/or artificial ingredients.

37.     Based on Defendants' uniform material misrepresentations and omissions, consumers have purchased the Products to their detriment.

**B.     Plaintiff Purchased the Misbranded Product**

38.     Plaintiff relied on Defendants' material representations and omissions, described herein, in deciding to purchase the Product, including that the Product is "natural."

39.     At the time Plaintiff purchased the Product, Plaintiff did not know, and had no reason to know, that the Product packaging, labeling, and advertising were misleading, deceptive, and unlawful as set forth herein.   Plaintiff would not have purchased the Product, or would have purchased it on different terms, if he had known the truth.

40.     It is possible, however, that Plaintiff would purchase the Products in the future if they were properly labeled, and/or the ingredients complied with the labeling and advertising statements, including that they only contained "natural" ingredients, and no longer contained phenoxyethanol, sodium benzoate, amodimethicone, sodium lauryl glucose carboxylate, polysorbate 20, lauryl glucoside, sorbic acid, malic acid, propylene glycol, and methylisothiazolinone.

41.     In   addition,   Defendants'   false,   misleading,   and   deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public.

## CLASS DEFINITION AND CLASS ALLEGATIONS

42.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself, on behalf of all others similarly situated, and as a member of the Nationwide Class and California Subclass defined as follows (collectively, the "Class"):

**CLASS ACTION COMPLAINT**

> All citizens of the United States who, within the relevant statute of limitation periods, purchased Defendants' Products ("Nationwide Class");

> All citizens of California who, within four years prior to the filing of this Complaint, purchased Defendants' Products within the territorial jurisdiction of California ("California Subclass").

43.    Excluded from the Class are: (i) Defendants, their assigns, successors, and legal representatives; (ii) any entities in which Defendants have controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) all persons presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (v) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

44.    Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendants, or otherwise.

45.    This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

46.    **Numerosity**:  Members of the Class are so numerous that joinder of all members is impracticable.  Upon information and belief, the Class consists of hundreds of thousands of purchasers dispersed throughout the United States, and the Subclass likewise consists of thousands or tens of thousands of purchasers throughout the State of California.  Accordingly, it would be impracticable to join all members of the Class before the Court.

47.    **Common Questions Predominate:**  There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues.  Included within the common questions of law or fact are:

- Whether Defendants made material representations and omissions in the

marketing and sale of the Products;

- Whether Defendants engaged in unlawful, unfair or deceptive business practices by advertising and selling their Products;

- Whether Defendants violated California Bus. & Prof. Code § 17200, *et seq.*; Cal. Bus. & Prof. Code § 17500, *et seq.*; and the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*;

- Whether Defendants committed a breach of express warranty;

- Whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;

- Whether Plaintiff and the Class members have sustained damage as a result of Defendants' unlawful conduct;

- The proper measure of damages sustained by Plaintiff and Class members; and

- Whether Defendants were unjustly enriched by their deceptive practices.

48.    **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class he seeks to represent because Plaintiff, like the Class members, purchased Defendants' misbranded Products.   Defendants' unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.  Plaintiff and the Class sustained similar injuries arising out of Defendants' conduct.  Plaintiff's and Class members' claims arise from the same practices and course of conduct and are based on the same legal theories.

49.    **Adequacy:** Plaintiff is an adequate representative of the Class he seeks to represent because his interests do not conflict with the interests of the members of the Class Plaintiff seeks to represent.  Plaintiff will fairly and adequately protect the interests of members of the Class and has retained counsel experienced and competent in the prosecution of complex class actions including complex questions that arise in consumer protection litigation.

50.    **Superiority and Substantial Benefit:** A class action is superior to other

methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a.  The claims presented in this case predominate over any questions of law or fact, if any exists at all, affecting any individual member of the Class;

b.  Absent a Class, the members of the Class will continue to suffer damage and Defendants' unlawful conduct will continue without remedy while Defendants profit from and enjoy their ill-gotten gains;

c.  Given the size of individual Class members' claims, few, if any, members could afford to or would seek legal redress individually for the wrongs Defendants committed against them, and absent members have no substantial interest in individually controlling the prosecution of individual actions;

d.  When the liability of Defendants have been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e.  This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the Class can seek redress for the harm caused to them by Defendants.

51.  Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants.

52.  The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendants have acted or refused

**CLASS ACTION COMPLAINT**

1  to act on grounds generally applicable to the Class, thereby making appropriate final

2  injunctive or equitable relief with respect to the Class as a whole.

3      53.    The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P.

4  23(b)(3) are also met as questions of law or fact common to Class members predominate

5  over any questions affecting only individual members, and a class action is superior to

6  other available methods for fairly and efficiently adjudicating the controversy.

7      54.    Plaintiff and Plaintiff's counsel are unaware of any difficulties that are

8  likely to be encountered in the management of this action that would preclude its

9  maintenance as a class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Unfair and Unlawful Business Acts and Practices**
**(Business and Professions Code § 17200, *et seq.*)**
**(*for the California Subclass*)**

14     55.    Plaintiff re-alleges and incorporates by reference the allegations contained

15  in the preceding paragraphs of this complaint, as though fully set forth herein.

16     56.    Defendants' conduct constitutes an unfair business act and practice

17  pursuant to California Business & Professions Code §§ 17200, *et seq.* (the "UCL").  The

18  UCL provides, in pertinent part:  "Unfair competition shall mean and include unlawful,

19  unfair or fraudulent business practices and unfair, deceptive, untrue or misleading

20  advertising . . . ."

21     57.    Plaintiff brings this claim seeking equitable and injunctive relief to stop

22  Defendants' misconduct, as complained of herein, and to seek restitution of the amounts

23  Defendants acquired through the unfair, unlawful, and fraudulent business practices

24  described herein.

25     58.    Defendants' knowing conduct, as alleged herein, constitutes an "unfair"

26  and/or "fraudulent" business practice, as set forth in California Business & Professions

27  Code §§ 17200-17208.

28     59.    Defendants' conduct was and continues to be unfair and fraudulent because,

**CLASS ACTION COMPLAINT**

directly or through their agents and employees, Defendants made uniform materially false representations and omissions that the Products were "natural," when in fact they were not.

60.    Defendants are aware that the representations and omissions they have made about the Products were and continue to be false and misleading.

61.    Defendants had an improper motive—to derive financial gain at the expense of accuracy or truthfulness—in their practices related to the labeling and advertising of the Products.

62.    There were reasonable alternatives available to Defendants to further Defendants' legitimate business interests, other than the conduct described herein.

63.    Defendants' misrepresentations of material facts, as set forth herein, also constitute an "unlawful" practice because they violate California Civil Code §§ 1572, 1573, 1709, 1710, 1711, and 1770, as well as the common law.

64.    Defendants' conduct in making the representations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to their competitors.    This conduct engenders an unfair competitive advantage for Defendants, thereby constituting an unfair business practice under California Business & Professions Code §§ 17200-17208.

65.    In addition, Defendants' conduct was, and continues to be, unfair, in that the injury to countless purchasers of the Products is substantial, and is not outweighed by any countervailing benefits to consumers or to competitors.

66.    Moreover, Plaintiff and members of the California Subclass could not have reasonably avoided such injury.    Defendants' uniform, material representations and omissions regarding the Products were likely to deceive, and Defendants knew or should have known that their representations and omissions were untrue and misleading. Plaintiff purchased the Products in reliance on the representations made by Defendants, as alleged herein.

**CLASS ACTION COMPLAINT**

67.    Plaintiff and members of the California Subclass have been directly and proximately injured by Defendants' conduct in ways including, but not limited to, the monies paid to Defendants for the Products that lacked the characteristics advertised, interest lost on those monies, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff and Subclass members.

68.    As a result of the business acts and practices described above, Plaintiff and members of the California Subclass, pursuant to § 17203, are entitled to an Order enjoining such future wrongful conduct on the part of Defendants and such other Orders and judgments that may be necessary to disgorge Defendants' ill-gotten gains and to restore to any person in interest any money paid for the Products as a result of the wrongful conduct of Defendants.

69.    Pursuant to Civil Code § 3287(a), Plaintiff and the California Subclass are further entitled to pre-judgment interest as a direct and proximate result of Defendants' unfair and fraudulent business conduct.  The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the California Subclass are entitled to interest in an amount according to proof.

**SECOND CAUSE OF ACTION**
**Deceptive Advertising Practices**
**(California Business & Professions Code §§ 17500, *et seq.*)**
**(*for the California Subclass*)**

70.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

71.    California Business & Professions Code § 17500 prohibits "unfair, deceptive, untrue or misleading advertising . . . ."

72.    Defendants violated § 17500 when they represented, through their false and misleading advertising and other express representations, that Defendants' Products possessed characteristics and value that they did not actually have.

73.    Defendants' deceptive practices were specifically designed to induce

**CLASS ACTION COMPLAINT**

reasonable consumers like Plaintiff to purchase the Products. Defendants' uniform, material representations and omissions regarding the Products were likely to deceive, and Defendants knew or should have known that their uniform representations and omissions were untrue and misleading. Plaintiff purchased the Product in reliance on the representations made by Defendants, as alleged herein.

74.    Plaintiff and members of the California Subclass have been directly and proximately injured by Defendants' conduct in ways including, but not limited to, the monies paid to Defendants for the Products that lacked the characteristics advertised, interest lost on those monies, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff and Subclass members.

75.    The above acts of Defendants, in disseminating material misleading and deceptive representations and statements throughout California to consumers, including Plaintiff and members of the California Subclass, were and are likely to deceive reasonable consumers in violation of § 17500.

76.    In making and disseminating the statements alleged herein, Defendants knew or should have known that the statements were untrue or misleading, and acted in violation of § 17500.

77.    Defendants continue to engage in unlawful, unfair and deceptive practices in violation of §17500.

78.    As a direct and proximate result of Defendants' unlawful conduct in violation of § 17500, Plaintiff and members of the California Subclass, pursuant to § 17535, are entitled to an Order of this Court enjoining such future wrongful conduct on the part of Defendants, and requiring Defendants to disclose the true nature of their misrepresentations.

79.    Plaintiff and members of the California Subclass also request an Order requiring Defendants to disgorge their ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendants by means of such acts of false advertising,

plus interests and attorneys' fees.

## THIRD CAUSE OF ACTION
### Consumer Legal Remedies Act
### (Cal. Civ. Code § 1750, *et seq.*)
### (*for the California Subclass*)

80.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

81.    Plaintiff brings this action pursuant to California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*.

82.    The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

83.    The Products are "goods," as defined by the CLRA in California Civil Code §1761(a).

84.    Defendants are "person[s]" as defined by the CLRA in California Civil Code §1761(c).

85.    Plaintiff and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code §1761(d).

86.    Purchase of the Products by Plaintiff and members of the California Subclass are "transactions," as defined by the CLRA in California Civil Code §1761(e).

87.    Defendants violated Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have" in that the Products are falsely labeled and advertised as being, among other things, "natural." Defendants knew that consumers will often pay more for products with these attributes and have unfairly profited from their false and misleading claims.

88.    Similarly, Defendants violated section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . if they are of another" by falsely and deceptively labeling and advertising the Products as, among other things, "natural."

89.    In addition, Defendants violated section 1770(a)(9) by advertising the Products "with intent not to sell them as advertised" in that the Products are falsely labeled and advertised as, among other things, "natural."

90.    Defendants' uniform, material, representations and omissions regarding the Products were likely to deceive, and Defendants knew or should have known that their representations and omissions were untrue and misleading.

91.    Plaintiff and members of the California Subclass could not have reasonably avoided such injury. Plaintiff and members of the California Subclass were unaware of the existence of facts that Defendants suppressed and failed to disclose; and, Plaintiff and members of the California Subclass would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

92.    Plaintiff and members of the California Subclass have been directly and proximately injured by Defendants' conduct. Such injury includes, but is not limited to, the purchase price of the Products and/or the price of the Products at the prices at which they were offered.

93.    Given that Defendants' conduct violated § 1770(a)(5), Plaintiff and members of the California Subclass are entitled to seek and do seek injunctive relief to put an end to Defendants' violations of the CLRA.

94.    Moreover, Defendants' conduct is malicious, fraudulent, and wanton in that Defendants intentionally misled and withheld material information from consumers to increase the sale of the Products.

95.    Pursuant to California Civil Code § 1782(a), Plaintiff on his own behalf, and on behalf of members of the California Subclass, notified Defendants of the alleged violations of the Consumer Legal Remedies Act. Despite giving Defendants 30 days from the date of Defendants' receipt of the notification letter to provide appropriate relief for violations of the CLRA, Defendants have failed to provide any such relief. As such, Plaintiff also seeks compensatory, monetary, and punitive damages, in addition to equitable and injunctive relief, and requests that this Court enter such Orders or

**CLASS ACTION COMPLAINT**

judgments as may be necessary to restore to any person in interest any money that may have been acquired by means of such unfair business practices, and for such other relief as is provided in California Civil Code § 1780 and in the Prayer for Relief.

96.    Plaintiff further requests that the Court enjoin Defendants from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to § 1780(a)(2).

**FOURTH CAUSE OF ACTION**
**Breach of Express Warranty**
***(for the Nationwide Class and California Subclass)***

97.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as though fully set forth herein.

98.    By advertising and selling the Products at issue, Defendants made promises and affirmations of fact on the Products' packaging, and through their marketing and advertising, as described above.  This labeling and advertising constitute express warranties and became part of the basis of the bargain between Plaintiff and members of the Class, and Defendants.

99.    Defendants purport, through their advertising, to create express warranties that the Products are, among other things, "natural."

100.   Despite Defendants' express warranties about the nature of the Products, the ingredients in the Products are not natural, and the Products are, therefore, not what Defendants represented them to be.

101.   Accordingly, Defendants breached express warranties about the Products and their qualities because the Products do not conform to Defendants' affirmations and promises.

102.   As a direct and proximate result of Defendants' breach of express warranty, Plaintiff and members of the Class were harmed, for example, in the amount of the purchase price they paid for the Products.  Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other general and specific

damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
### Quasi-Contract
### (*for the Nationwide Class and California Subclass*)

103.   Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

104.   By purchasing the Products, Plaintiff and members of the Class conferred a benefit on Defendants in the form of the purchase price of the Products.

105.   Defendants had knowledge of such benefits.

106.   Defendants appreciated the benefit because, were consumers not to purchase the Products, Defendants would not generate revenue from the sales of the Products.

107.   Defendants' acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendants' fraudulent and misleading representations and omissions.

108.   Equity cannot in good conscience permit Defendants to be economically enriched for such actions at the expense of Plaintiff and members of the Class, and therefore restitution and/or disgorgement of such economic enrichment is required.

## **PRAYER**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendants as follows:

A. For an order certifying the Nationwide Class and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of the Class and Subclass; and naming Plaintiff's attorneys as Class Counsel to represent the Class and Subclass;

B. For an order declaring that Defendants' conduct violates the statutes and laws referenced herein;

**CLASS ACTION COMPLAINT**

C. For an order awarding, as appropriate, compensatory and monetary damages, restitution or disgorgement to Plaintiff and the Class for all causes of action;

D. For an order requiring Defendants to immediately cease and desist from selling their misbranded Products in violation of law; enjoining Defendants from continuing to label, market, advertise, distribute, and sell the Products in the unlawful manner described herein; and ordering Defendants to engage in corrective action;

E. For an order awarding attorneys' fees and costs;

F. For an order awarding punitive damages;

G. For an order awarding pre-and post-judgment interest; and

H. For such other and further relief as the Court deems just and proper.

DATED:  July 10, 2017                    Respectfully submitted,

                                         **KAMBERLAW, LLP**

                                         By:  /s/ Christopher D. Moon
                                              Christopher D. Moon (SBN 246622)
                                              cmoon@kamberlaw.com
                                              Naomi Spector (SBN 222573)
                                              nspector@kamberlaw.com

                                              **THE FRASER LAW FIRM, P.C.**
                                              Michael T. Fraser (SBN 275185)
                                              mfraser@thefraserlawfirm.net

                                              *Attorneys for Plaintiff and the putative Class*